Our first case up this morning is 419-0396. People v. Lymon. For the appellant is Ms. Ms. Brooks, may I proceed? Thank you, your honors. May it please the court, my name is Allison Paige Brooks. I am here on behalf of the people. When the legality of the officer's orders for the defendant to stop during his flight from the police, as well as the legality of the ultimate seizure when the defendant was tased in a ball field depends on the police at that time of the ultimate seizure possessing reasonable suspicion and also for the lawfulness of the orders to stop, which when the defendant obstructs that by continuing to flee constitutes the offense of obstructing the peace officer, thereby giving the police probable cause to counsel. Don't we have to start from the very beginning of this interaction? It seems to me you're suggesting that we only look at when he was ordered to stop. Don't we need to begin at the beginning of the encounter? Well, that is essentially almost the main issue that this court needs to decide, that the primary dispute of the parties is exactly at what point the seizure turned from merely an attempted seizure to an actually effectuated seizure. Because the important part of one of the points of the Thomas case is that the courts have to look at the basis for the seizure at the point the police ultimately effectuated. And so if the cases that the state cites is like the federal cases of Valentine, Washington, and Hernandez, where the facts that the police gain from the defendant's flight are considered in determining whether the ultimate seizure was supported by a reasonable suspicion. And so the defendant's flight can and should and must be considered as part of what the police know when the police actually effectuated. To answer your Honor's question, the defense position, I believe, is that they were actually seized like at the moment of the very first stop, before the police even approached. And that's, it seems like if that is the case, then the state would then have to fall back to the attenuation doctrine because of the valid warrant. Do you agree with that? I do not agree with the defendant's position as to whether he was actually seized initially, but it seems like the defendant would accept the attenuation argument. Because I believe that the way it was treated below is that the abandonment was more as a result of the unlawful seizure. But if he's not actually seized at that point, then the Hoskins case would apply. Because at Hoskins, a woman fled a scene where she was stopped. But because she fled and abandoned her purse behind at the scene, it was considered abandoned. And she had no reasonable expectation of privacy. It was not subject to suppression. Which is a lot different than the facts here, right? He was told, put your jacket down by the police, and he complied with that command. Is that right? Yes, he did comply with that command. But complying with a few commands is not sufficient to constitute an actually effectuated seizure. The Valentine case, the defendant was not seized. Even though he paused in response to police commands and even gave his name in response to police commands. In response to police authority. But he was not actually seized at that moment. What if he had never run? And he had complied with all these directions, and the defendant asserts there is no legitimate basis for my stop, and he moves to suppress the evidence? Well, then, under the Utah v. Streeth case, because this was a bona fide investigation for the report of a person with a gun, there's no evidence of systemic or repeated misconduct. And the stop itself was not flagrant. So all the elements of attenuation would apply. And if... What do you mean the stop wasn't flagrant? At the moment, the police ordered him to stop, and they had a legitimate basis to do so. Why they didn't? Well, see, attenuation is not simply a matter of whether the police conduct was unlawful. One of the factors is whether the misconduct was flagrant. And so it could be that the police lacked reasonable suspicion to do so, but the lack of reasonable suspicion at that moment in time was not flagrant. Because here, they were not simply going around trying to ascertain who this person was and see if he might be carrying a gun. They were responding to a citizen complaint. Part of their policy is that if they're going to get out of the car, they turn on their lights so that they can engage in a safe interaction with them. That turning on the lights and ordering him to stop at that point is making him stop. It is a show of police authority. But a show of police authority is not sufficient to constitute an actual seizure at that point in time. And I understand the defendant is submitting to a few commands, but the cases that the state relies on, like the Valentine case, the other one is Washington, a person there stopped in response to the police sirens. But then if you go, then under Hernandez, it says it recognizes a policy that the defendant may not tactically use his flight for the police to discard evidence and still insist on maintaining protections of the Fourth Amendment. So if he does stop, he knows that the police are going to find a valid warrant on him, they are going to arrest him, and eventually everything in his pockets is going to be routinely inventoried at the station house. And all that's going to be admitted, and it's not going to be suppressed because of attenuation. That's Utah v. Street. I mean, that's essentially what should have happened here. And so while the defendant is being rewarded for his unlawful flight from police, it's not like the ship case where the police were conducting an unlawful frisk. They were still like 20 feet away. And the other reason here is that tactically speaking, the gun's in the jacket, the police are ordering him to get rid of the jacket on the ground. It's like that is actually in the defendant's favor because he wants to get that gun off of him. And now he's just doing it in response to police commands, but this is something that he could have or would have discarded during his flight from police. So by leaving it from behind, that actually served the defendant's interest. He wanted to be able to get that gun and the jacket off of his person so he could flee without having that gun on him. And so I don't see how that would not further the policy of allowing the defendant to discard evidence and still yet maintain his Fourth Amendment protections notwithstanding his unlawful flight from police. So the Holden case is on point in terms of the lawfulness of the arrest for obstructing a peace officer because the police do have a lawful order for him to stop. While he is fleeing from them, because it is where the facts that could be corroborated, the swinging of the pendulum, the heavy weight in the jacket, the jackets then sit on the ground. But that corroborates part of the tip. And when the defendant then flees in response, after being told that he's there for an investigation of him having a gun. And so when he flees that scene, then the police have reasonable suspicion. A person of objectively reasonable caution would believe and reasonably suspect at that moment that this defendant had in fact possessed a gun and was doing so illegally. And that's why he was running from the police. And that is why the police have reasonable suspicion at the moment. They are ordering him to stop running from that ball field. And when they chase him and he goes down and then he's being arrested, that it does not seem like he should be rewarded for that by having this evidence. What about concealed carry? Concealed carry? In this state, yes, we had concealed carry. But the fact that if he is running from the police, then that is an indication that his possession of that gun was in fact not lawful and not subject to a concealed carry permit. Because otherwise, he could have simply told police, I have a concealed carry permit. I have a gun on me, but it's lawful. I have a concealed carry permit. And then cooperated with the police at that point. That seems to be what he should have done, but he did not do that. And the police then could take that into consideration through their experience in interacting with armed citizens. That this defendant was in fact reasonably suspected not to be legally possessing a firearm. That his possession would not be legal. And so the abandonment issue, like in Hoskins where the woman fled and left behind her purse. I mean, this is almost directly on point in terms of, he's leaving that jacket at the scene, in public, on the street in a desolate area. And he is running headlong from that jacket. He has no reasonable expectation of privacy in the contents of that jacket. And the gun should not have been suppressed. And so the cocaine itself, again, was subject to the lawful arrest for obstructing a peace officer. After he ran in response to a lawful order to stop. So that could be lawfully obtained in a warrantless search incident to arrest. And as well as the inevitable discovery doctrine under Hoskins. It would have been inevitably found during a station house inventory search. So for those reasons, the suppression should be reversed at entertaining the questions you have for others. Thank you very much Ms. Brooks. Ms. Zinske? Thank you. May it please the court, counsel. Counsel. My name is Sarah Zinske with the Office of the State Appellate Defender. And I'm appearing on behalf of Nathan Lyman today. The trial court correctly granted Mr. Lyman's motion to suppress the evidence. Because they did not have reasonable suspicion for the original stop. They did not have suspicion he was committing a crime. He was seized when he complied with the officer's six separate commands. And because he was unlawfully seized, his subsequent flight from officer did not constitute resisting arrest or obstructing justice. As the court mentioned, under the conceivable... Ms. Brooks has argued that the show of police authority is not in seizure. What's your response? Your Honor, under Hodari D, a show of authority is a seizure if the individual complies and submits to that show of authority. Mr. Lyman submitted to six separate instructions before he ran. As the trial court correctly indicated, he... Once the officers had activated their lights, stopped at his path, exited the car, and then told him to stop walking and to face them, that was a seizure. But then the seizure continued when they ordered him to place his jacket on the ground, step away from his jacket, lift up his shirt, and then turn around. As part of that, when he did put the jacket on the ground, it was seized. It was not a voluntary relinquishment of the jacket. So unlike Hoskins, it could not have been abandoned in this case. And under Schiff... Well, in Hoskins, was the item thrown from the defendant when the defendant was running from the police? Yes, Your Honor, that's correct. I forgot, was it a purse? Yes, it was a purse. And also in Hoskins, that individual, they had a lawful reason to arrest her. Fleeing from an arrest under Schiff is treated differently than fleeing from an unlawful seizure, which is what happened in this case. And they were aware of that at the time that they initiated the encounter with the defendant in Hoskins, is that correct? Correct, Your Honor, because they had just observed her. They were investigating her for prostitution at the time. Here, they did not have any information indicating that he was committing a crime. They didn't see him obstructing any traffic. There was no report that he was being disorderly, like the defendant in Eiler. There was no indication he was committing a crime. And so his flight from the unlawful seizure would not constitute resisting arrest. Well, there was a 911 call, right? Correct. And it was an anonymous tip that someone was carrying a gun. Yes. And that's not enough for the police to make an encounter to determine if someone is carrying a gun and doesn't have a permit to do so? Your Honor, it would have been different if the individual had provided someone's name or, again, any further activity. If they had the name, the officers probably could have run the name to see if there was a FOIA card for that individual. Or if the police, you know, hadn't seen that individual before, that would be different. But, again, this was a call from an individual who did not want to disclose her name to police. She did not report any suspicious activity other than the firearm, which is in compliance with the Concealed Carry Act. Was this a call made to the police station? Yes. At the hearing of the motion to suppress, was any further evidence presented regarding it? They played the 911 recording where the individual did not want to disclose her name. They did not follow up on that and indicate that the police determined who called. Doesn't the police department have a means of ascertaining the phone number of whoever was called in? Yes, Your Honor, they could. But even if the call is reliable, despite the fact that she didn't disclose her name, it still did not report a crime. And for reasonable suspicion, the officers have to reasonably believe that an individual was committing a crime or was going to commit a crime. And they did not have that information here. At the hearing of the motion to suppress, no evidence was presented regarding the identity of the caller based upon the phone number? Correct. Did anyone ask about it? Your Honor, I don't believe so, but I am not sure about that. Perfect. Counselor, are you saying the law in Illinois now is that if someone is seen with a weapon walking along a park in a town like Danville, that police officers cannot stop and ask whether the person carrying the weapon has a permit? I mean, they can't do so without, I guess, violating the Fourth Amendment. Is that the law in Illinois now? No, Your Honor. If the officers attempted to initiate a consensual encounter and asked the individual for information, the individual would be able to leave, but they would be able to ask if they have a Fourth Amendment. Okay, so I worded the question incorrectly. Obviously, the officers can do that. Yes. But the law in Illinois now is that the person can just walk away. It's like, I don't care to talk to you, officers. Well, an individual can always terminate an unlawful terrorist act. That would not simply be a new case involving firearms. And if it's an unlawful seizure, the law in Illinois has been that an individual can terminate that encounter. So had the officers gotten out of their car and said, hold on, your man would like to talk to you, would that have been a seizure? No, Your Honor, that would not. He would then have been free to choose whether to speak to them or not at that point in time. But again, that's not what happened here. They had their lights activated, they exited the vehicle, started issuing commands immediately, told him that he had to comply with their orders, and then issued further commands. So that would constitute a seizure. He submitted to their show of authority. When you say they told him he had to comply, what did they say in that regard? They indicated they were investigating a report of a gun and that he needed to follow their instructions. Once he did ultimately flee from police, one of the officers grabbed the jacket from the ground, which they had seized while seizing him as an individual, and discovered the gun while in the squad car. This all occurred long before they knew his name or that he potentially could have a warrant, so attenuation does not apply to that. Once he was ultimately tased and handcuffed, the other officer asked him why he ran, and he indicated that he believed he had a warrant. That also does not trigger attenuation in this case because they did not actually know he had a warrant until after the second dispatch returned indicating that he did in fact have a warrant. And that was long after they had discovered the cocaine in his pants. Additionally, Your Honor, his inevitable discovery does not apply. There was no constitutionally valid arrest here. And because they have no reason to arrest him without the unlawful seizure, they would not have known about the warrant, so that exception also does not apply. I just want to make sure I follow what you're saying. You're saying the flight here makes no difference. Correct. And explain again, walk me through it, why it makes no difference here. Yes. So, Your Honor, under People v. Shipp, an individual may flee from an unlawful police seizure. Because the seizure here was unlawful and unsupported by probable cause or reasonable suspicion, he was able to flee because a defendant who runs away from an unlawful Terry stop or seizure is not resisting or obstructing an authorized act of police officers. Because the police officer's action here was not authorized, because they did not have reasonable suspicion or probable cause. What case is that you're citing? People v. Shipp, but that's also an Eiler, Your Honor. And because he did not have reasonable suspicion or, the officers did not have reasonable suspicion or probable cause, he was able to flee. So I think Ms. Brooks argues he gets rewarded for fleeing, and I guess that's, is she right? No. But if the evidence is not suppressed, then the police officers are rewarded for instituting an unlawful seizure. Which is what happened in this case. If the court doesn't have any further questions. Eiler dealt with the question of whether or not the evidence could prove resisting and obstructing an arrest. It wasn't dealing with the question of a legitimate basis to make a stop, was it? Well, Your Honor, Eiler, the defendant, was on a bicycle and they reported him for being loud, which was disorderly conduct. And then when the officers said something to him, he immediately fled. So the reason, the evidence, there was no motion, there was no suppression hearing in that case, I apologize. I believe the individual is raising ineffective assistance of counsel for not filing a motion to suppress. But he was never seized because he never complied with the show of authority. Which is very different from the facts here, where my client complied with six separate orders from the officers. Anything further? No, Your Honor. Okay. Thank you, counsel. Thank you. Ms. Brooks, any rebuttal? No, Your Honor. Okay. Thank you, Your Honors. The defendant insists that he was subjected to six separate commands. It seems like most of these are very minor, like to stop, place the jacket on the ground, turn around, step away from the jacket. It's actually only accomplishing one thing, that police are trying to get him to stop and put the jacket on the ground. Because they saw the pendulum swinging motion. They knew the heavy object was in the jacket. They figured it was the gun. Isn't the key question whether or not this has been a detention as a result of police orders? I mean, when you say, talking about specific words used, if he's going about his business and has the right to stop by the police, and he does, why is that different from the police saying you're under arrest and stop? Isn't the effect essentially the same? No, Your Honor, because they haven't actually gotten him seized. He's tactically submitting to the one thing that presumably he wants to do is to get the gun off of this person. And the police are giving him a few commands to get him to put the jacket on the ground. And when he's ordered to turn around, he runs. And so, I mean, the actual submission here was very minor in relation to the ship case where he's actually being, they're attempting to frisk him. Here they're getting closer to like 20 feet away from him. And so the amount of submission in ship, where then the police are now attempting an unlawful frisk of him, where they're holding onto him, and then he runs. So the question there, it begs the question of when ship was seized, because if ship was already seized and now they're attempting to frisk him and then he runs away, then you can't rely on his running away to say whether the police had reasonable suspicion that the moment they actually seized him. Then that is before the attempted frisk in ship. But here they don't actually get a hold of the defendant. And when he's running away from them, they can consider that in whether they have reasonable suspicion to support the ultimate seizure, the actual moment when they first effectuated. That's when he stays and not before. And so that's why ship is distinguishable. And the fact is that the policy that the defendant may not be rewarded for fleeing and attempting to discard evidence and still yet maintain his Fourth Amendment protections. Here, whatever number of commands he was got, the only thing it really accomplished was to stop him and get the jacket on the ground with the gun in it. And then he runs, which is exactly what the defendant wanted to do, was to get the gun off of him and then run. And now he's claiming Fourth Amendment protections. And that's the policy, is not to permit the defendants to do that. And so I understand the questions. Otherwise, I request the court to rehearse it. Thank you, Your Honor. Thank you, counsel. The court will take this matter under endorsement and it will recess for a few moments.